**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ALINA SULICI and ALEX CHIHAIA
individually and on behalf of all those
similarly situated,

              Plaintiffs,

v.

COLOR IMAGE APPAREL D/B/A ALO
YOGA., ALO, LLC, BRIGET STARLEE,
BRUNA LÍRIO, CORAL SIMANOVICH
ROBERTO, GIZELE OLIVEIRA,
GEORGINA MAZEO, JOY CORRIGAN,
JOSIE CANSECO, LEXI WOOD, LUDI
DELFINO, MADISON TEEUWS,
MICHELLE SALAS, OLIVIA PONTON,
SARA ORREGO, TESSA BROOKS,
VERONKA RAJEK,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Civil Action No.**

1:25-cv-3928

**JURY TRIAL DEMANDED**
**CLASS ACTION**

_____

**CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**
_____

      Plaintiffs, ALINA SULICI and ALEX CHIHAIA, on behalf of themselves and all

those similarly situated, bring this Class Action Complaint against COLOR IMAGE

APPAREL D/B/A ALO YOGA., ALO, LLC, BRIGET STARLEE, BRUNA LÍRIO,

CORAL SIMANOVICH ROBERTO, GIZELE OLIVEIRA, GEORGINA MAZEO, JOY

CORRIGAN, JOSIE CANSECO, LEXI WOOD, LUDI DELFINO, MADISON

TEEUWS, MICHELLE SALAS, OLIVIA PONTON, SARA ORREGO, TESSA BROOKS, VERONKA RAJEK, alleging as follows:

## INTRODUCTORY STATEMENT

1.      This is a nationwide class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendants COLOR IMAGE APPAREL D/B/A ALO YOGA, ALO, LLC., (collectively "ALO") and so-called "influencers" illegally endorsing and promoting ALO products on social media: BRIGET STARLEE, BRUNA LÍRIO, CORAL SIMANOVICH ROBERTO, GIZELE OLIVEIRA, GEORGINA MAZEO, JOY CORRIGAN, JOSIE CANSECO, LEXI WOOD, LUDI DELFINO, MADISON TEEUWS, MICHELLE SALAS, OLIVIA PONTON, SARA ORREGO, TESSA BROOKS, VERONKA RAJEK (together "Influencers").

2.      With millions of users all over the United States, in the last ten years social media became the place to be.  Due to mostly unregulated activity, it quickly grabbed the attention of those perpetrating "get rich quick" scams and other illegal behavior.

3.      This action is arising from the deceptive, unfair, and misleading promotion of ALO products in the state of Illinois, Florida, California and throughout the United States via social media platforms like Instagram.

4.      During the Class Period (defined below), the Influencers misrepresented the material connection they have with ALO by promoting, endorsing, and recommending ALO products without disclosing the fact that they were compensated to do it, a practice that is highly unfair and deceptive.

5.      In in order to artificially inflate the prices for the ALO products, both ALO

and the Influencers devised a scheme in which the Influencers will endorse the ALO products, by tagging or recommending them while pretending they are disinterested consumers.

6.      While having large audiences, the Influencers involved are not known to a significant portion of the viewing public, with none of them having over 10 million followers.

7.      ALO products were sold mostly online, most of their customers being social media users exposed to undisclosed advertising.

8.      Relying on the undisclosed advertising and misleading endorsements, Plaintiffs and the Class Members (defined below) purchased ALO products and paid a premium, while the ALO products purchased proved to be of a lower value than the price paid. Plaintiffs filed this action to recover the difference between the price paid and the market value of the products as purchased.

## ALO YOGA

9.      ALO began in Los Angeles in 2007 by producing and selling a small variety of yoga-related clothing products.

10.      Following their increased popularity on social media, especially Instagram, and due to many Influencers endorsing ALO products, the brand expanded, and it is now producing everything from sports jackets and coats to intimates, to jewelry, sunglasses and shoes. It also sells dietary supplements, cosmetics and fragrances.

11.      Online sales and subscriptions to the Alo Moves fitness platform account

for roughly 90% of annual revenue[1].

12.     The boom ALO experienced could not have been possible without the "sales power" provided by the Influencers that claimed that they love ALO:

a.  "❤@alo ❤@aloyoga❤" writes Lexi Wood[2], on Instagram conveying her love message using emojis.

b.  "Did I say already how much I love @alo yoga?" rhetorically ask Coral Simanovich Roberto[3] in an Instagram post.

13.     While it is now clear that the Influencers love the free gifts (and the financial compensation they receive for wearing ALO), their followers are led to believe that they purchased the products and wear them because they love it. This is a textbook example of deceptive advertising.

14.     ALO started without brick-and-mortar stores in the US and historically relied on online sales, most of which are generated by the undisclosed advertising by the Influencers on social media.

15.     In recent years, ALO opened a number of stores in malls across the country, most of their visitors being drawn to the stores by the Influencers on social media.

16.     Interestingly, ALO is compliant in international markets with the rules against deceptive advertising when using influencers due to the prompt enforcement of regulations regarding unfair advertising in the international markets.

---

[1] Breen, J. (2023) Inside Alo Yoga's activewear empire, Fitt Insider. Available at:
https://insider.fitt.co/inside-alo-yogas-activewear-empire/ (Accessed: 11 November 2024).
[2] Post available at https://www.instagram.com/p/CgeysuKLJfs/ (Accessed: 11 November 2024).
[3] Post available at https://www.instagram.com/p/ChFxrpaM8p_/ (Accessed: 11 November 2024).



"#ad"

Anna Safroncik, for example, is an Italian actress and celebrity that uses "#ad" when posting about ALO.

17.     Other brands in the same market, like Lululemon or Nike are consistently offering either lower prices or better quality than ALO. An analysis of identical products that were offered on both ALO and other athleisure brands shows that the prices on ALO website are usually 10-40% more than those of their competitors for the same quality products.

18.     While competitors like Lululemon and Nike are also using influencer marketing, there is a stark difference in the way all these companies act on social media. Lululemon, for example is asking the influencers to properly disclose the material relationship with the brand by using the "Paid Partnership" tag and comply with the FTC interpretation of the FTC Act.

19.     Various others ALO competitors on markets like fragrances, cosmetics, and sunglasses are also disclosing material relationship that they have with their social media influencers.



"Paid partnership"

"#ad"

20.    On the other hand, ALO and the Influencers are omitting altogether any reference of the fact that the post is not the Influencer's honest opinion, but rather undisclosed advertising and paid endorsement, gaining an unfair market advantage and allowing ALO to charge more for its products.

21.    Out of the considerable profits derived by ALO from this scheme, part of the money is used to compensate the Influencers for their indispensable role.

### THE UNDISCLOSED ADVERTISING

22.    While the practice employed by ALO and the Influencers is very profitable, it is, nevertheless, illegal. Federal law, Illinois, and California law prohibit such commercial behavior.

23.    Tags in social media posts, demonstrations, depictions of the name, signature, likeness or other identifying personal characteristics of an individual, and the name or seal of an organization can be endorsements. *See.* 16 C.F.R. § 255.

24.    The influencers are knowingly posting depictions of themselves wearing ALO, while mentioning the name of the brand and posting the brand's tag in their social media post (both on the caption and on the picture).

6

25.     Plaintiffs saw ALO products being worn or used by some of the Instagram influencers they followed which led to them purchasing ALO products, which proved to be of an inferior quality compared with the premiums they paid for the ALO products.

26.     By looking at the posts, prior to making their purchases, Plaintiffs were unable to discern the fact that those posts were paid posts, rather than organic, honest recommendations and endorsements by the Influencers.

27.     But for the false endorsements by the Influencers and the misleading advertising claims, Plaintiffs and the Class Members would not have purchased ALO products at the price they purchased them for.

28.     In deciding to purchase ALO products, Plaintiffs and Class Members followed what they believed to be the honest advice of the Influencers. None of the posts Plaintiffs saw mentioned, as required by the FTC Act and state law, that the Influencers are nothing more than paid advertisers, endorsing the brand.

29.     In most of the posts Influencers will only tag ALO, suggesting that this is their choice for clothing, footwear and cosmetics. In other words, Influencers make it appear that they purchased ALO products as opposed to other products, because of the qualities of the product.

30.     Sometimes the Influencers will specifically indicate that the ALO products are their favorite clothing, shoes, or their favorite cosmetics or express their unconditional love for the brand.

31.     This undisclosed advertising and false endorsements have been present on Instagram in the last several years. Defendants have been advertising and endorsing ALO

products on Instagram over the years, without mentioning even once that they are compensated (substantial amounts) to advertise ALO and keep it quiet.

## NATURE OF THE ACTION

32.     Plaintiffs, Alina Sulici and Alex Chihaia, on behalf of themselves and all those similarly situated Class Members seek damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-gotten monies, attorney's fees and costs, and other relief from Defendants for unjust enrichment, negligent misrepresentation, violations of the FTC Act, 15 U.S.C. § 45(a), and, therefore, violations of the state laws, violation of California Unfair Competition Law ("UCL"), violation of California False Advertising Law, violations of California's Consumers Legal Remedies Act ("CLRA"), and violations of Illinois Uniform Deceptive Trade Practices Act ("DTPA") and Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA")

## PARTIES

33.     Plaintiff, Alina Sulici ("Sulici"), is a citizen of Illinois who resides in Cook County IL and is otherwise *sui juris*. Sulici purchased ALO products and paid a premium as a direct effect of undisclosed endorsements by Influencers.

34.     Plaintiff Alex Chihaia ("Chihaia"), is a citizen of Florida who resides in Broward County FL and is otherwise *sui juris*. Chihaia purchased ALO products and paid a premium as a direct effect of undisclosed endorsements by Influencers.

35.     Plaintiffs bring this action on their behalf and on behalf of all other persons similarly situated class members (as defined below).

36.     Defendant COLOR IMAGE APPAREL d/b/a ALO is a company registered

and headquartered in California doing business worldwide and around the United States, including in Illinois, Florida and California. ALO owns the website https://www.aloyoga.com, the corresponding mobile application, and the @alo, @aloyoga, and @alowellness_ Instagram accounts.

37. Defendant ALO, LLC is a company registered and headquartered in California doing business worldwide and around the United States, including in Illinois, Florida and California.

38. Discovery will reveal the precise responsibilities and roles of each of the "ALO" entities in connection with the allegations in the Complaint.

39. Defendant Bridget Starlee ("Starlee") is a citizen of the United States who resides in Los Angeles County, CA, and is otherwise *sui juris*. Starlee is transacting business in Illinois, Florida, California, and nationwide over the internet and actively soliciting business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/bridgetsatterlee/

40. Defendant BRUNA LÍRIO, ("Lirio"), is a citizen of California who resides in Los Angeles County and is otherwise *sui juris*. Lirio is transacting business in Illinois,

Florida, California, and nationwide over the internet and actively soliciting business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/brunalirio/

41.     Defendant Joy Corrigan ("Corrigan") is a citizen of the United States who resides in Los Angeles County, CA, and is otherwise *sui juris*. Corrigan is transacting business in Illinois, Florida, California, and nationwide over the internet and actively soliciting business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/joycorrigan/

42.     Defendant CORAL SIMANOVICH ROBERTO ("Simanovich") is a citizen of the United States who resides in Spain and is otherwise *sui juris*. Simanovich is

transacting business in Illinois, Florida, California, and nationwide over the internet and actively soliciting business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/coralsimanovich/

43.    Defendant GIZELE OLIVEIRA ("Oliveira") is a citizen of California who resides in Los Angeles County and is otherwise *sui juris*. Oliveira is transacting business in Illinois, Florida, California, and nationwide over the internet and actively soliciting business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/giizeleoliveira/

44.    Defendant GEORGINA MAZEO ("Mazeo") is a citizen of Florida who resides in Miami-Dade County and is otherwise *sui juris*. Mazeo is transacting business in Illinois, Florida, California, and nationwide over the internet and actively soliciting

business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/georginamazzeo/

46.     Defendant JOSIE CANSECO ("Canseco") is a citizen of New York who resides in New York County and is otherwise *sui juris*. Canseco is transacting business in Illinois, Florida, California, and nationwide over the internet and actively soliciting business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/josiecanseco/

46.     Defendant LEXI WOOD ("Wood") is a citizen of New York who resides in New York County and is otherwise *sui juris*. Wood is transacting business in Illinois,

Florida, California, and nationwide over the internet and actively soliciting business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/lexiwood/

47.     Defendant Ludi Delfino ("Delfino") is a citizen of the United States who resides in Los Angeles County, CA, and is otherwise sui juris. Delfino is transacting business in Illinois, Florida, California, and nationwide over the internet and actively soliciting business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/ludidelfino/

48.     Defendant Madison B. Teeuws a/k/a/ MADI TEEUWS ("Teeuws"), is a

citizen of New York who resides in New York County and is otherwise *sui juris*. Teeuws is transacting business in Illinois, Florida, California, and nationwide over the internet and actively soliciting business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/madtev/

49.     Defendant MICHELLE SALAS ("Salas'), is a citizen of New York who resides in New York County and is otherwise *sui juris*. Salas is transacting business in Illinois, Florida, California, and nationwide over the internet and actively soliciting business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/michellesalasb/

14

50.     Defendant OLIVIA PONTON ("Ponton') is a citizen of California who resides in Los Angeles County and is otherwise *sui juris*. Ponton is transacting business in Illinois, Florida, California, and nationwide over the internet and actively soliciting business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/olivia.ponton/

51.     Defendant Sara Orrego ("Orrego") is a citizen of the United States who resides in Miami-Dade County, FL, and is otherwise sui juris. Orrego is transacting business in Illinois, Florida, California, and nationwide over the internet and actively soliciting business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/saraorrego/

52.     Defendant Tessa Brooks ("Brooks") is a citizen of the United States who resides in Hawaii and is otherwise sui juris. Brooks is transacting business in Illinois, Florida, California, and nationwide over the internet and actively soliciting business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/tessabrooks/

53.     Defendant VERONKA RAJEK ("Rajek") is a citizen of California who resides in Los Angeles County and is otherwise sui juris. Rajek is transacting business in Illinois, Florida, California, and nationwide over the internet and actively soliciting business in Illinois, Florida, California, and nationwide.



Source: https://www.instagram.com/veronikarajek/

## JURISDICTION AND VENUE

54.     This is a national class action, including every purchaser of ALO Products in the United States.

55.     ALO revenue is approximately $250 million per year, a good part of which can be directly attributed to the undisclosed endorsements received on social media, therefore the estimated damages in this case are of at least US$ 150,000,000 for the entire class period.

56.     Collectively the Influencers have over 10,000,000 followers.

57.     The Nationwide Class, as defined below, is comprised of at least ten thousand people who purchased ALO products during the Class Period.

58.     This Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: 1) there are at least 100 class members; 2) the combined claims of Class Members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and 3) Defendants and Class Members are citizens of different states.

59.     The Court also has jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related state law claims.

60.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1). The ALO Defendants are headquartered in the Central District of California.

## STATEMENT OF FACTS

61.     Social media emerged in the last years as a main source of information and

communication[4] for billions of users.

62.     There were an estimated 159 million Instagram users in the United States in 2022[5].

63.     In 2024 the platform engaged over 2.4 billion monthly users[6].

64.     In the last ten years, Instagram has become one of the most popular ways to influence consumer behavior on social media. Since 2017, Instagram has grown tremendously, adding 100 million users every few months [7] . Around seven-in-ten Americans ages 18 to 29 (71%) say they use Instagram.[8]

65.     Given the enormous reach of the social media platforms, and in an effort to curb online behavior that ignores the law and uses the lack of enforcement as an excuse for violating laws across jurisdiction, the FTC has published guidelines for influencers regarding proper advertising practices[9].

66.     Indeed, the rapid growth of social media platforms, including Instagram, allowed for lack of regulation and oversight.  Some 80% of social media users said they

---

[4] Fink, T., 2021. *Drivers of User Engagement in Influencer Branding*. [S.l.]: Springer Fachmedien Wiesbaden, p.2.

[5] Statista. 2021. *Leading countries based on Instagram audience size as of October 2021*: http://www.statista.com/statistics/578364/countries-with-most-instagram-users/  (last visited Oct 28, 2022).

[6] https://seo.ai/blog/how-many-users-on-instagram (last visited Mar 2, 2025).

[7] Farhad Manjoo, *Why Instagram Is Becoming Facebook's Next Facebook* The New York Times, April 26, 2017, https://www.nytimes.com/2017/04/26/technology/why-instagram-is-becoming-facebooks-next-facebook.html (last visited Oct 28, 2022).

[8] Schaeffer, K., 2022. *7 Facts About Americans and Instagram*. Pew Research Center. https://pewrsr.ch/3FqryHE (last visited Feb 11, 2022).

[9] Federal Trade Commission. 2019. *Disclosures 101 for Social Media Influencers*. Available at: https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf (last visited Oct 28, 2022).

were concerned about advertisers and businesses accessing the data they share on social media platforms, and 64% said the government should do more to regulate advertisers[10].

67.     This is because some unscrupulous "influencers" are acting as advertisers for hire, making it a habit of posting fake reviews for sponsored products or failing to disclose the fact that they were paid to create the content displayed on their profile. More than often, these "influencers" would advertise everything from alcohol to cannabinoids, from political ideas to illegal giveaways, as long as they are paid the obscene amounts they are demanding.

68.     According to this business model, a number of carefully selected influencers will use products from ALO brands while pretending they purchased the products and present this fact to their followers, while being properly compensated, without disclosing any material relationship with any ALO entity.

69.     The marketing and sales strategy and the misleading claims above were developed by ALO in California and printed or otherwise distributed at the direction of its staff located in California. Also, ALO warrants, and oversees regulatory compliance and product distribution from California.

70.     Plaintiffs and Class Members purchase such products at inflated prices, exclusively because of the way the ALO products are advertised on social media and the misleading content of the advertisement.

71.     Despite being compensated for endorsing and promoting ALO products,

---

[10] Raine, L., 2022. *Americans' complicated feelings about social media in an era of privacy concerns.* http://www.pewresearch.org/fact-tank/2018/03/27/americans-complicated-feelings-about-social-media-in-an-era-of-privacy-concerns/ (last visited Feb. 15, 2022).

none of the Influencers use the "paid partnership" label suggested by the FTC or any other form of disclosure (#ad, #sponsored, #partner or a similar tag). A few influencers, at times, may use a buried small disclosure so it would be almost impossible for a social media user to discern the fact that the post was sponsored and the influencer was compensated for endorsing ALO.

72.     Therefore, the Influencers fail to be compliant with the FTC Act as interpreted by the FTC found in 16 C.F.R. § 255.5 and the FTC guidelines regarding advertising on social media.[11]

73.     Other influencers advertising ALO on social media without disclosing the material connection with the brand are: Emily Tanner, Fabiola Guajardo, Frida Aasen Chiabra, Jen Selter, Juliana Nalu, Natalia Barulich, Shannon DeLima, Chailee Son, Cindy Mello, and many more.

74.     In fact, many of the Influencers are familiar with the FTC guidelines and properly display the required disclosures when the brands are not willing to pay for them to disguise the advertising.



[11] Federal Trade Commission (FTC), *supra* note

Source: https://www.instagram.com/veronikarajek/



"#ad

"paid partnership"

Source: https://www.instagram.com/tessabrooks/

75.     Plaintiffs are "following" all the Influencers on Instagram. Plaintiffs' decision to purchase ALO products and pay a premium for those products was determined by the Influencers they followed, specifically by the Defendants in this case and the fact that they promoted ALO products.

76.     Plaintiff Chihaia purchased two products ("Full Zip Hoodie" and "Cargo Pant") from ALO on 05/17/2023 by placing an order online. The Order was fulfilled by ALO, LLC Maryland DC, 200 Gateway Drive, North East, MD, 21901 and shipped via UPS. The order number was D0458029.

77.     Plaintiff Sulici purchased three products ("T-Shirt Alosoft Finesse", "All Day Short Sleve" and "High-Waist Pursuit Trouser").

78.     Plaintiffs would not have purchased the ALO products if they knew that the Influencers were paid to endorse ALO and that the Influencers' claims were unfair and

misleading.

## THE ADVERTISING

79.     Meta, the parent company of Instagram, offers various products that advertisers can use for commercial use. For example, an advertiser may promote content using a *boosted post* or an *Instagram ad* for a price paid directly to Meta. Both the *post* and the *ad* are created by the advertiser that wants to promote a certain message, service, or product. They are clearly marked as advertising by Instagram.

80.     The same advertisers can also promote content by directly paying influencers to create a collaboration post. Influencers can also be paid for ads to be posted on the influencer's account, as part of the *grid* (the pictures and videos displayed for a user when accessing or refreshing an account) or as part of *stories* (short videos that only show for a limited amount of time and, usually, can only be viewed once). Such collaborations are usually properly disclosed.

81.     Another way Instagram allows advertisers to use the platform is by sponsoring independent content generated by the influencers themselves. In this case the influencer should take advantage of the "paid partnership" tag offered by Instagram to show that influencer is being compensated to generate this content. A "paid partnership" label is also a step in maintaining compliance with the Federal Trade Commission's ("FTC") rules and guidelines.

82.     Since, at times, Instagram algorithms may spot and remove posts where the "paid partnership" tag is not present, Influencers and ALO are going to great lengths to hide the nature of their partnership.

83. Every time an influencer advertises a product; such advertisement appears in the Instagram *feed* of social media users that are following the influencer.

84. The FTC has repeatedly made public guidelines for influencers regarding proper advertising practices, publishing a plain language interpretation of the FTC Act.

85. As recognized by the FTC, "[c]ompanies that use deceptive endorsements and reviews inflict an injurious double whammy. They harm consumers with misleading tactics that subvert their choices at check-out. And they take business away from honest competitors that work hard to comply with the law."[12]

86. By advertising ALO products without regards to the disclosure requirements, the Influencers are in violation of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Acts" enacted in Florida and California.

87. By instructing and allowing the influencers to advertise its products without making the proper disclosures, ALO is in violation of of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Acts" enacted in California and Illinois.

88. Given the fact that ALO products are endorsed by many of the Influencers he followed, after seeing the undisclosed advertising, Plaintiff decided to purchase various ALO Products.

89. Plaintiffs and the Class Members purchased ALO products and paid an

---

[12] Ritchie, J.N.& A. *et al.* (2023) *FTC and endorsements: Final revised guides, a proposed new rule, and an updated staff publication*, *FTC.gov*. Available at: https://www.ftc.gov/business-guidance/blog/2023/06/ftc-endorsements-final-revised-guides-proposed-new-rule-updated-staff-publication (Accessed: 07 September 2023).

unjustified premium for them.

## CLASS ALLEGATIONS

90.     Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully re-written herein.

91.     Plaintiffs assert the counts stated herein as class action claims pursuant to Fed. R. Civ. P. 23.

92.     Plaintiffs are filing this lawsuit on behalf of all persons that purchased ALO products relying on undisclosed paid endorsements on social media from March 20, 2021, to present ("Class Period").

93.     Plaintiff Sulici is a citizen of Illinois and seeks to represent two classes composed of and defined as follows:

Nationwide Class: All consumers that purchased ALO products in the United States.

Illinois Class: All consumers that purchased ALO products in the State of Illinois.

Multi-State Subclass: All residents of the following states that purchased products from ALO during the class period: Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisianna, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, South Carolina, Tennessee, Vermont, Washington, and Wisconsin. The consumer protection statutes of these states are materially identical with the statutes in Illinois and California. The respective statutes are: COLO. REV. STAT. § 6-1-102; CONN. GEN. STAT. § 42-110a; DEL. CODE ANN. tit. 6, § 2511; D.C. CODE ANN. § 28-3901; HAW. REV. STAT. § 480-1; IDAHO CODE § 48-603; 815 ILL. COMP. STAT. 510/1 (2024); IOWA CODE § 714.16; KAN. STAT. ANN. § 50-623 (2024); LA. STAT. ANN. § 51:1401 (2024); MICH. COMP. LAWS § 445.903; MINN. STAT. § 325F.69; MONT. CODE

ANN. § 30-14-101; NEB. REV. STAT. § 59-1601 (2024); NEV. REV. STAT. ANN. § 598.0903 (2024); N.H. REV. STAT. ANN. § 358-A:2 (2024); N.J. REV. STAT. § 56:8-2 (2024); N.M. STAT. ANN. § 57-12-2 (2024); N.Y. GEN. BUS. LAW § 349 (2024); OKLA. STAT. tit. 15, § 751 (2024); S.C. CODE ANN. § 39-5-10; TENN. CODE ANN. § 47-18-104 (2024); VT. STAT. ANN. tit. 9, § 2453 (2024); WASH. REV. CODE § 19.86.010 (2024); WIS. STAT. § 100.18 (2024).

94.     Plaintiff Chihaia is a citizen of Florida and seeks to represent one class composed of and defined as follows:

Nationwide Class: All consumers that purchased ALO products in the United States.

Multi-State Subclass: All residents of the following states that purchased products from ALO during the class period: Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisianna, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, South Carolina, Tennessee, Vermont, Washington, and Wisconsin. The consumer protection statutes of these states are materially identical with the statute in California. The respective statutes are: COLO. REV. STAT. § 6-1-102; CONN. GEN. STAT. § 42-110a; DEL. CODE ANN. tit. 6, § 2511; D.C. CODE ANN. § 28-3901; HAW. REV. STAT. § 480-1; IDAHO CODE § 48-603; 815 ILL. COMP. STAT. 510/1 (2024); IOWA CODE § 714.16; KAN. STAT. ANN. § 50-623 (2024); LA. STAT. ANN. § 51:1401 (2024); MICH. COMP. LAWS § 445.903; MINN. STAT. § 325F.69; MONT. CODE ANN. § 30-14-101; NEB. REV. STAT. § 59-1601 (2024); NEV. REV. STAT. ANN. § 598.0903 (2024); N.H. REV. STAT. ANN. § 358-A:2 (2024); N.J. REV. STAT. § 56:8-2 (2024); N.M. STAT. ANN. § 57-12-2 (2024); N.Y. GEN. BUS. LAW § 349 (2024); OKLA. STAT. tit. 15, § 751 (2024); S.C. CODE ANN. § 39-5-10; TENN. CODE ANN. § 47-18-104 (2024); VT.

STAT. ANN. tit. 9, § 2453 (2024); WASH. REV. CODE § 19.86.010 (2024); WIS. STAT. § 100.18 (2024).

95.　　Collectively the members of the Nationwide Class and the Muti-State Subclass shall be referred to as "Class Members"

96.　　The classes exclude counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

97.　　Plaintiffs reserve the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limited to particular issues.

98.　　This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

99.　　Numerosity: At least one million consumers have been injured by Defendants' deceptive marketing practices, including the named Plaintiff. At least one million consumers have purchased ALO products and paid a premium for it in reliance on the Defendants' representations.

100.　　Each of the classes represented by the named Plaintiffs has at least one thousand members and the joinder of all members is impracticable.

101.　　Typicality: Plaintiff's story and his claims are typical for the class and, as

the named Plaintiff is aware of other persons in the same situation. Plaintiffs and the members of each class sustained damages arising out of Defendants' illegal course of business.

102. <u>Commonality:</u> Since the whole class purchased ALO products and such products are promoted by the Defendants, the questions of law and fact are common to the class.

103. <u>Adequacy:</u> Chihaia will fairly and adequately protect the interests of each class he represents.

104. <u>Superiority:</u> As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**VIOLATIONS OF 15 U.S.C. § 45(a)**
**(**not pled as an independent cause of action)

105. By failing to disclose their material connection with the brand, the Influencers are in violation of 15 U.S.C. § 45(a).

106. By failing to mandate and enforce disclosure of material connections with the Influencers, ALO is in violation of 15 U.S.C. § 45(a).

107. The violations of the 15 U.S.C. § 45(a) are not pled as an independent cause of action, but as an element of one or more of the causes of action detailed in this Complaint.

**COUNT I: VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND
DECEPTIVE TRADE PRACTICES ACT**
(On behalf of Plaintiff Sulici and Illinois Subclass)

108. Plaintiff incorporates by reference paragraphs 1-107 of this Complaint as if

fully re-written herein. Sulici asserts this count on her own behalf and on behalf of the Illinois Subclass, as defined above, pursuant to Fed. R. Civ. P. 23.

109.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS §§ 505/1, et seq., provides protection to consumers by mandating fair competition in commercial markets for goods and services.

110.    The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS § 505/2.

111.    The ICFA applies to Defendants' acts as described herein because it applies to transactions involving the sale of goods or services to consumers.

112.    Each Defendant is a "person" as defined by section 505/1(c) of the ICFA

113.    Plaintiff and each member of the Class are "consumers" as defined by section 505/1(e) of the ICFA.

114.    ALO products constitute "merchandise" under the meaning of section 505/1(b) and its sale is within the meaning of "trade" or "commerce" under the ICFA.

115.    Defendants' misrepresentations regarding the material connections between ALO and the Influencers and the endorsements obtained by ALO are deceptive and unfair acts and practices prohibited by Chapter 2 of ICFA.

116.    Defendants are also in violation of Section 5(a) of 15 U.S.C. § 45(a) as interpreted by the FTC, which should be considered as a violation of 815 ILL. COMP.

STAT. ANN. 505/2

117.    Defendants violated the ICFA when it misrepresented facts regarding ALO Products. Accordingly, the misrepresentations were the central reason for consumers chose to purchase ALO products over other alternatives, and to pay a premium for it.

118.    Plaintiff and members of the Class relied upon Defendants' misrepresentations and omissions when they purchased ALO Products at a premium.

119.    If Plaintiff and the Class had been aware of the true characteristics of the ALO products and the fact that the Influencers are not honest consumers but that they are compensated to endorse ALO, they would not have purchased ALO products.

120.    Defendants also violated section 510/2(a)(5) of the DTPA by representing that ALO products have the unconditional approval of the Influencers, while the Influencers chose to wear ALO products only because they were compensated.

121.    Plaintiff and the Class saw Defendants' marketing and online advertising materials prior to purchasing ALO products, and they reasonably relied on Defendant's misrepresentations and omissions when they purchased ALO products.

122.    Defendants' misrepresentations and omissions regarding ALO products were acts likely to mislead the Plaintiff and the Class members acting reasonably under the circumstances and thus constitute unfair and deceptive trade practices in violation of ICFA.

123.    As a direct and proximate result of Defendant's violation of the ICFA, Plaintiff and the Class members have suffered harm in the form of monies paid in exchange for the ALO products they purchased because they paid more than what they would have otherwise paid had they know the true nature of the product and the relation between the

Influencer and the brand.

124. The value of the loss, calculated as the price paid for an ALO product less the value of the products is of at least $5,000,000 for the entire Illinois Subclass.

125. Defendants' practices set forth herein offend public policy, were and are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to consumers.

## COUNT II: VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (On behalf of Plaintiff Sulici and Illinois Subclass)

126. Plaintiff incorporates by reference paragraphs 1-107 of this Complaint as if fully re-written herein. Sulici asserts this count on her own behalf and on behalf of the Illinois Subclass, as defined above.

127. At all times relevant hereto, there was in full force and effect the Illinois Uniform Deceptive Practices Act, 815 ILCS 510/1, et seq. ("DTPA").

128. Furthermore, Defendants represent that ALO products have endorsements that they do not have.

129. Defendants advertise ALO products with the intent not to sell them as advertised by using the false and misleading endorsements and illegal marketing practices detailed above.

130. Defendants' false and misleading statements set forth above were made knowingly and intentionally, with the intent to mislead the named Plaintiffs and the Class.

131. Accordingly, Defendants have violated the DTPA.

## COUNT III: VIOLATION OF THE CONSUMERS LEGAL REMEDY ACT. CAL. CIV. CODE. §§ 1750, *ET SEQ.*

(On behalf of Plaintiffs Chihaia and Sulici and the Nationwide Class)

132.    Plaintiffs incorporate by reference paragraphs 1-107 of this Complaint as if fully re-written herein. Plaintiffs assert this count on their own behalf and on behalf of the Nationwide Class, as defined above, and pursuant to Rule 23.

133.    The conduct that forms the basis of this action arose in California, the state in which ALO has its headquarters and principal place of operations.

134.    Defendants developed, designed, and implemented policies and procedures at issue in this case in California.

135.    Defendants are each a "person" within the statutory meaning of Cal. Civ. Code § 176l(c).

136.    Defendants provided "goods" within the meaning of Cal. Civ. Code §§ 1761(a), 1770.

137.    Plaintiffs and Class Members of the Nationwide Class are "consumers" within the meaning of Cal. Civ. Code §§ l76l(d), 1770 and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761(e), 1770.

138.    As set forth herein, Defendants' acts and practices, undertaken in transactions violate §1770 of the Consumers Legal Remedies Act in that:

a.    Defendants misrepresented the source, sponsorship, approval, or certification of the goods or services.

b.    Defendants misrepresented the affiliation, connection, or association with, or certification by another.

c.    Defendants represented that the goods or services have approval,

characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; and

     d.    Defendants advertised goods or services with intent not to sell them as advertised.

139.    Pursuant to the provision of Cal. Civ. Code §1780, Plaintiffs seek an order enjoining Defendants from the unlawful practices described herein, a declaration that Defendants' conduct violates the Consumers Legal Remedies Act, and attorneys' fees and costs of litigation.

### COUNT IV: VIOLATIONS OF CALIFORNIA'S UNLAWFUL BUSINESS PRACTICES ACT, CAL. BUS. & PROF. CODE § 17200. *ET. SEQ*
(On behalf of named Plaintiffs and the Nationwide Class)

140.    Plaintiffs incorporate by reference paragraphs 1-107 of this Complaint as if fully re-written herein. Plaintiffs assert this count on their own behalf and on behalf of the Nationwide Class, as defined above, and pursuant to Fed. R. Civ. Pro. 23.

141.    The conduct that forms the basis of this action arose in California, the state in which ALO has its headquarters and principal place of operations. Defendants developed, designed, and implemented policies and procedures at issue in this case in California.

### Unfair And Fraudulent Competition

142.    Defendants have engaged in unfair competition within the meaning of Cal. Bus. & Prof. Code §§17200, et seq., because Defendants' conduct is unlawful, unfair, and/or fraudulent, as herein alleged.

143.    Plaintiffs, the class members, and Defendants are each a "person" or "persons" within the meaning of § 17201 of the California Unfair Competition Law ("UCL").

144.    Defendants promoted and advertised ALO products without properly disclosing their financial interest and such acts and practices constitute deceptive acts or practices in violation of Section 5(a) of 15 U.S.C. § 45(a).

145.    A violation of Section 5(a) of 15 U.S.C. § 45(a) represents a *per se* violation of the California Unfair Competition Law ("UCL").

146.    In the alternative, failure to disclose paid sponsorships and endorsements represents conduct that violates California Unfair Competition Law ("UCL").

**Unlawful Competition**

147.    The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies.  Plaintiffs hereby incorporate by reference all prior causes of action into this cause of action.

**Violations of Advertising Law**

148.    By making statements that are not true and statements that are misleading, Defendants are in violation of California False Advertising Law, Cal. Civ. Code. §§ 17500, *ET SEQ*.

149.    "'[A]ny violation of the false advertising law . . . necessarily violates the UCL.'"  (*Kasky, supra*, 27 Cal.4th at p. 950.)  Section 17500 "proscribe[s] '"not only advertising which is false, but also advertising which [,] although true, is either actually

33

misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" [Citation.]" (*Colgan v. Leatherman Tool Group, Inc*. (2006) 135 Cal.App.4th 663, 679.)

150.    Plaintiff and the Nationwide Class Members request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and Class Members any monies Defendants acquired by unfair competition, including restitution and/or equitable relief, including disgorgement or ill-gotten gains, refunds of monies, interest, reasonable attorneys' fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

151.    Plaintiffs and Class Members seek attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

### COUNT V: UNJUST ENRICHMENT UNDER CALIFORNIA LAW
(On behalf of named Plaintiffs and the Nationwide Class)

152.    Plaintiffs incorporate by reference paragraphs 1-107 of this Complaint as if fully rewritten herein. As set forth above, Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated Instagram users.

153.    By paying the high prices demanded by ALO, Plaintiff and Class Members conferred a direct benefit to all the Defendants.

154.    Instagram users that are members of the class continue to suffer injuries as a result of the Defendants' behavior. If the Defendants do not compensate Plaintiffs and class members, they would be unjustly enriched as a result of their unlawful act or practices.

155.    It is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for the Defendants to retain said benefit, reap unjust enrichment.

156.    Under California law, one person should not be permitted to unjustly enrich himself at the expense of another and should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution is made.

157.    Since the Defendants unjustly enriched themselves at the expense of the Instagram users, members of the Nationwide Class, Plaintiff requests the disgorgement of these ill-gotten money.

158.    Due to Defendants' conduct, Plaintiffs and the Class Members are entitled to damages according to proof.

**COUNT VI: VIOLATIONS OF CONSUMER PROTECTION LAWS OF VARIOUS STATES**
(On behalf of Plaintiffs Sulici, Chihaia, and the Multi-State Class)

159.    Plaintiff incorporates by reference paragraphs 1-107 of this Complaint as if fully re-written herein. Plaintiff asserts this count on her own behalf and on behalf of the Pennsylvania Subclass, as defined above.

160.    As discussed *supra*, by failing to disclose material connections, Defendants violated 15 U.S.C. § 45(a) ("FTC Act") as interpreted by the FTC and the courts, which represents a violation of the little FTC Acts of the states included in the Multi-State Class.

161.    The consumer protection statutes enacted in the states included in the Multi-State Class are materially identical to ICFA and UCL.

162.     As such, the members of the Multi-State Class are entitled to damages as calculated by each consumer protection statute in the state where they reside.

## COUNT VII: UNJUST ENRICHMENT UNDER ILLINOIS LAW
(On behalf of Plaintiffs Sulici and the Illinois Subclass)

163.     Plaintiff incorporates by reference paragraphs 1-107 of this Complaint as if fully rewritten herein. As set forth above, Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated Instagram users.

164.     By paying the high prices demanded by ALO, Plaintiff and Class Members conferred a direct benefit to all the Defendants consisting in the price difference between the price of the product as advertised and the actual value of the product (without the undisclosed paid endorsements)

165.     Instagram users that are members of the class continue to suffer injuries as a result of the Defendants' behavior. If the Defendants do not compensate Plaintiff and class members, they will be unjustly enriched as a result of their unlawful act or practices.

166.     Under Illinois law, Plaintiff properly alleged that the Defendants have unjustly retained a benefit to the Plaintiff's detriment, and that Defendants' retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

167.     Since the Defendants unjustly enriched themselves at the expense of the Instagram users, members of the Nationwide Class, Plaintiff requests the disgorgement of these ill-gotten money.

168.     Due to Defendants' conduct, Plaintiffs and the Class Members are entitled to damages according to proof.

## COUNT VIII: NEGLIGENT MISREPRESENTATION

(On behalf of Named Plaintiffs and the Nationwide Class)

169.    Plaintiffs incorporate by reference all paragraphs 1-107 of this Complaint as if fully rewritten herein. As set forth above, Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated persons pursuant to Rule 23.

170.    Defendants had a duty to be truthful in their commercial speech.

171.    In convincing Plaintiffs to purchase ALO products, Defendants made representations and endorsements that they knew to be false or negligently failed to examine the veracity of the affirmations.

172.    As a result of the Defendants' negligent misrepresentations, Plaintiffs and the Nationwide Class Members suffered injury.

## DEMAND FOR JURY TRIAL

173.    Plaintiffs and those similarly situated Class Members demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Alina Sulici and Alex Chihaia, respectfully request that judgment be entered in their favor and in favor of the Class Members as follows:

a.      Certifying and maintaining this action as a class action, with the named Plaintiffs as designated class representatives and with their counsel appointed as class counsel;

b.      Declaring the Defendants in violation of each of the counts set forth above;

c.      Awarding Plaintiffs and those similarly situated compensatory, punitive, and treble damages in excess of $150,000,000;

d.     Awarding Plaintiffs and those similarly situated liquidated damages;

e.     Order the disgorgement of ill-gotten monies;

f.     Awarding the named Plaintiffs a service award;

g.     Awarding pre-judgment, post-judgment, and statutory interest;

h.     Awarding attorneys' fees and costs;

i.     Awarding such other and further relief as the Court may deem just and proper.

Dated: April 11, 2025

Respectfully Submitted,

s/Bogdan Enica
Bogdan, Enica, Esq.
KEITH GIBSON LAW P.C.
FL Bar No.: 101934
1200 N Federal Hwy., Ste.375
Boca Raton FL 33432
Telephone: (305) 306-4989
Email:Bogdan@KeithGibsonLaw.com

Keith L. Gibson, Esq.
KEITH GIBSON LAW P.C.
IL Bar No.: 6237159
490 Pennsylvania Avenue, Suite 1
Glen Ellyn IL 60137
Telephone: (630) 677-6745
Email: Keith@KeithGibsonLaw.com

*Attorneys for Plaintiffs and the*
*Putative Class Members*